**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

    Plaintiff,

        v.

GRISTEDE'S FOODS NY, INC.,

    Defendant.

24 Civ. __4981__ (JLR)

## **CONSENT DECREE**

TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ................................................................................4
II.     APPLICABILITY ...................................................................................................5
III.    ADMISSIONS .........................................................................................................6
IV.     DEFINITIONS .........................................................................................................7
V.      CIVIL PENALTY ....................................................................................................9
VI.     INJUNCTIVE REQUIREMENTS .........................................................................11
VII.    PARTICIPATION IN RECOGNITION PROGRAMS ..........................................18
VIII.   REPORTING REQUIREMENTS ..........................................................................18
IX.     STIPULATED PENALTIES ...................................................................................21
X.      FORCE MAJEURE ................................................................................................26
XI.     DISPUTE RESOLUTION ......................................................................................28
XII.    INFORMATION COLLECTION AND RETENTION ..........................................30
XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................................32
XIV.    COSTS ....................................................................................................................34
XV.     NOTICES ...............................................................................................................34
XVI.    EFFECTIVE DATE ...............................................................................................35
XVII.   RETENTION OF JURISDICTION ........................................................................35
XVIII.  MODIFICATION ...................................................................................................35
XIX.    TERMINATION .....................................................................................................35
XX.     PUBLIC PARTICIPATION ...................................................................................36
XXI.    SIGNATORIES/SERVICE ....................................................................................37
XXII.   INTEGRATION ......................................................................................................37
XXIII.  26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION ..................................37
XXIV.   HEADINGS ............................................................................................................38
XXV.    FINAL JUDGMENT ..............................................................................................38

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent Decree, alleging that Defendant Gristede's Foods NY, Inc. ("Gristedes") violated Section 608 of the Clean Air Act (the "CAA" or the "Act"), 42 U.S.C. § 7671g, and the commercial refrigerant repair and recordkeeping regulations at 40 C.F.R. Part 82 Subpart F (the "Recycling and Emissions Reduction Rule" or "RER Rule");

WHEREAS, the complaint against Defendant alleges that Defendant violated the requirements of the RER Rule applicable to commercial refrigeration and comfort cooling equipment at its grocery stores operating under the banner Gristedes Supermarkets by, among other things, failing to calculate refrigerant leak rates when adding refrigerants to its appliances, failing to conduct required monitoring and inspections, failing to perform necessary repairs and to retire appliances that could not be repaired, failing to report significant refrigerant leaks to the EPA, and failing to conduct necessary recordkeeping. As a result, Defendant released significant amounts of harmful Ozone-Depleting Substances ("ODSs") and Greenhouse Gases ("GHGs") into the environment;

WHEREAS Defendant no longer uses ODSs as refrigerants at its stores but instead uses refrigerants referred to as hydrofluorocarbons, or HFCs, which are also GHGs;

WHEREAS, on October 19, 2023, EPA proposed regulations at 40 C.F.R. Part 84 Subpart C pertaining to the management of HFCs under the authority of the American Innovation and Manufacturing Act of 2020, codified at 42 U.S.C. 7675;

WHEREAS, Defendant estimates that the relief provided by Section VI of this Consent Decree will cost at least $13,500,000.00, and Defendant acknowledges that this representation is material to the United States for purposes of entering into this Consent Decree.

3

WHEREAS, Defendant wishes to resolve this matter and make the admissions set forth in Section III of this Consent Decree; and

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Act, 42 U.S.C. § 7413(b), and over the Parties. Venue lies in this District pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because a substantial part of the violations alleged in the Complaint occurred in, and Defendant conducts business in, this judicial district. For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

2.    For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 113(b) and 608 of the Act, 42 U.S.C. §§ 7413(b), 7671g.

3.    The United States has given notice of the commencement of this action to the applicable air pollution control agencies as required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

4

## II.    APPLICABILITY

4.    The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

5.    No transfer of ownership or operation of any Store, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented at that Store, except that, with respect to any Store transferred in accordance with this Paragraph, Defendant need only ensure that the terms of Section VI.C are implemented.  At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA and the United States Attorney for the Southern District of New York, in accordance with Section XV (Notices).  Any attempt to transfer ownership or operation of any Store without complying with this Paragraph constitutes a violation of this Decree.

6.    Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, as well as provide a copy of this Consent Decree to any contractor retained to perform work required under this Consent Decree.  Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

7.    In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.    ADMISSIONS

8.    Defendant admits, acknowledges, and accepts responsibility for the following:

   a.    Between January 1, 2019, and December 31, 2021, Defendant owned and operated a chain of eighteen or more supermarkets operating under the banner Gristedes Supermarkets in New York City.

   b.    Between January 1, 2019, and December 31, 2021, Defendant utilized refrigerants regulated under the RER Rule in the appliances utilized at Gristedes Supermarkets locations.

   c.    Between January 1, 2019, and December 31, 2021, Defendant failed to adopt or implement refrigerant management practices that were consistent with the RER Rule.

   d.    Between January 1, 2019, and December 31, 2021, Defendant failed to calculate the leak rates for appliances upon addition of refrigerants to those appliances and to maintain records of the same.

   e.    Between January 1, 2019, and December 31, 2021, Defendant failed to repair appliances that had leak rates above applicable thresholds under the RER Rule and to maintain records of the same.

   f.    When repairs were made between January 1, 2019, and December 31, 2021, Defendant failed to perform initial and follow-up verification tests to ensure that the repairs were successful, to perform subsequent leak inspections at intervals required by the RER Rule, and to maintain records of the same.

   g.    Between January 1, 2019, and December 31, 2021, where Defendant was unable to control the leak rates in its appliances, it failed to implement retrofit or retirement plans for the appliances that had uncontrolled leaks or to maintain records of the same.

   h.    Between January 1, 2019, and December 31, 2021, where Defendant's appliances had leak rates over 125% of their full charge over the course of a calendar year, Defendants failed to submit reports to EPA related to those chronically leaking appliances, as required by the RER Rule.

   i.    As a result of Defendant's non-compliance with the RER Rule, Gristedes Supermarkets had refrigerant leak rates of 40%, 59%, and 46% in 2019, 2020, and 2021, respectively, resulting in the emission of 42,094 pounds of refrigerants, in total.

## IV.    DEFINITIONS

9.      Terms used in this Consent decree that are defined in the Act or in regulations promulgated pursuant to the Act have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

a.    "Acquired Store" shall mean any Store for which the ownership or operation is acquired from a third-party entity by Defendant whether by the assignment of the lease, an asset purchase agreement or otherwise, from the date of lodging until this Consent Decree is terminated in accordance with Section XIX;

b.    "Advanced Refrigerants" shall mean any refrigerant that is not an ozone-depleting substance and that has a GWP of 150 or less, and that complies with all other legal requirements;

c.    "Complaint" means the complaint filed by the United States in this action;

d.    "Company-Wide Average Leak Rate" for a given Effective Year shall mean the sum of the total number of pounds of Refrigerant added to all Covered Refrigeration Equipment at all Stores during the period of Defendant's ownership or operation in such Effective Year, divided by the total Full Charge (in pounds) of all Covered Refrigeration Equipment at all Stores owned or operated by Defendant in such Effective Year, as calculated using the Company-Wide Average Leak Rate Formula in Appendix A, which is attached to and incorporated into this Consent Decree;

e.    "Consent Decree" or "Decree" means this Decree and all appendices attached hereto;

f.    "Covered Refrigeration Equipment" shall mean refrigeration equipment at any Store, including any refrigerator, chiller, freezer, or air conditioner, with a Full Charge of 50 pounds or more of Refrigerant;

g.    "Day" means a calendar day unless expressly stated to be a business day.  In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day;

h.    "Effective Date" means the definition provided in Section XVI;

i.    "Effective Year" shall mean the twelve consecutive month period beginning on the first of the month of the first full calendar month that occurs at least 60 days after the Effective Date;

j.    "Full Charge" shall mean the amount of refrigerant required for normal operating characteristics and conditions of the appliance as determined by using one or a combination of the following four methods: (1) Use of the equipment manufacturer's determination of the full charge; (2) Use of appropriate calculations based on component sizes, density of refrigerant, volume of piping, and other relevant considerations; (3) Use of actual measurements of the amount of refrigerant added to or evacuated from the appliance, including for seasonal variances; and/or (4) Use of an established range based on the best available data regarding the normal operating characteristics and conditions for the appliance, where the midpoint of the range will serve as the full charge.

k.    "GWP Value" of a Refrigerant shall be the global warming potential value published by its manufacturer;

l.    "HFC Regulations" shall mean the regulations published at 40 C.F.R. Part 84, Subpart C, once those regulations have been finalized and published;

m.    "Proposed HFC Regulations" shall mean the regulations proposed by EPA on October 19, 2023, to be published at 40 C.F.R. Part 84, Subpart C (available at 88 Fed. Reg. 72216), pertaining to the management of HFCs under the authority of the American Innovation and Manufacturing Act of 2020, codified at 42 U.S.C. 7675;

n.    "Leak Inspection" means the examination of an appliance to determine the location of refrigerant leaks. Potential methods include, but are not limited to, ultrasonic tests, gas-imaging cameras, bubble tests as appropriate, or the use of a leak detection device operated and maintained according to manufacturer guidelines. Methods that determine whether the appliance is leaking refrigerant but not the location of a leak, such as standing pressure/vacuum decay tests, sight glass checks, viewing receiver levels, pressure checks, and charging charts, must be used in conjunction with methods that can determine the location of a leak;

o.    "Major Remodel" shall mean a Store remodel completed during the three calendar years of the year of the Effective Date of existing retail space occupied by Defendant with a general contract price of $1,500,000 or more;

p.    "New Commercial Refrigeration Appliance" shall mean any commercial refrigeration appliance or comfort cooling appliance that Defendant acquires, first leases, or begins to operate after the date of lodging;

q.    "New Store" shall mean any Store opened by Defendant from the date of lodging until this Consent Decree is terminated in accordance with Section XIX;

r.    "Paragraph" means a portion of this Decree identified by an Arabic numeral;

s.    "Parties" means the United States and Defendant;

t.  "Refrigerant" shall mean any substance, including blends and mixtures, consisting in part or whole of a regulated substance or a substitute for a regulated substance that is used for heat transfer purposes, including those that provide a cooling effect;

u.  "Refrigerant Compliance Management Plan" shall mean a plan prepared by Defendant and approved by EPA in accordance with Section VI.A of this Consent Decree. The Refrigerant Compliance Management Plan will include any subsequent amendments or changes to such plan made in accordance with Paragraph 26 of this Consent Decree;

v.  "Section" means a portion of this Decree identified by a Roman numeral;

w.  "Store" shall mean any store that contains any Covered Refrigeration Equipment that is owned or operated by Defendant as of July 1, 2023 through the date of termination of this Decree in accordance with Section XIX;

x.  "Transferee" shall mean a third-party company or operator that is not a direct or indirect subsidiary of Defendant.

## V.    CIVIL PENALTY

10.    Defendant shall pay the sum of $400,000 as a civil penalty, plus interest as described in this Paragraph.  This payment shall be made in four payments of $100,000 plus interest as described in this Paragraph with the payments due 30, 120, 210, and 300 Days after the Effective Date, as set forth in Appendix B to this Consent Decree.  Defendant shall include with the first payment an additional amount for interest accrued at the rate of 5.2% per year on the total payment amount from the Effective Date through the date of payment.  Defendant shall include with each subsequent payment an additional amount for interest accrued at the rate of 5.2% per year on the unpaid balance from the date of the previous payment through the date of the payment.

11.    Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer to the DOJ account, in accordance with instructions provided to Defendant by the United States Attorney's Office for the Southern District of New York after the Effective Date.  The payment instructions will include a Consolidated Debt Collection System ("CDCS") number, which

Defendant shall use to identify all payments required to be made in accordance with this Consent Decree.

12.     At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to DOJ via email or regular mail in accordance with Section XV; and (iii) to EPA in accordance with Section XV. Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States of America v. Gristedes Foods NY, Inc.* and shall reference the civil action number and CDCS Number.

13.     Defendant may make any payment prior to its due date, but must contact the U.S, Attorney's Office in advance for a determination regarding the amount of interest to be included with the payment. If any installment payment includes an overpayment, the amount of the overpayment will be applied to the remaining principal.

14.     If Defendant fails to make any payment required under Paragraph 10 by the due date, the Government may send Defendant a notice of late payment.  If Defendant fails to make the payment and to pay all interest and stipulated penalties owed within 30 days of receipt of the notice, all remaining payments and all accrued interest will be due immediately. Interest will continue to accrue on any unpaid amounts until Defendant pays the total amount due. Interest required under this Paragraph is in addition to any stipulated penalties owed under Section IX.

15.     If Defendant becomes the subject of a proceeding under the Bankruptcy Code, 11 U.S.C. § 101-1532, all remaining payments and all accrued interest will be due immediately. Interest will continue to accrue on any unpaid amounts until Defendant pays the total amount due.

Interest required under this Paragraph is in addition to any stipulated penalties owed under Paragraph IX.

16.    Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section IX (Stipulated Penalties) in calculating its federal income tax.

17.    Defendant acknowledges that the amount of the civil penalty and payment schedule have been set based on its documented inability to pay and that, in the absence of a limited ability to pay, under the relevant EPA penalty policy, Defendant's civil penalty would have been significantly higher than the agreed-upon amount.

## VI.    INJUNCTIVE REQUIREMENTS

### A.    Refrigerant Compliance Management Plan

18.    Within 180 Days of the Effective Date, Defendant shall submit to EPA a Refrigerant Compliance Management Plan applicable to all Stores owned or operated by Defendant.

19.    At all times, Defendant's Refrigerant Compliance Management Plan shall include, at minimum, the following components:

      a.    A list of all Covered Refrigeration Equipment at all Stores currently owned and operated by Defendant;

      b.    Procedures sufficient to ensure implementation of the requirements set forth in the Proposed HFC Regulations (prior to their final publication), the HFC Regulations (after their final publication), and all requirements set forth in this Consent Decree for all Covered Refrigeration Equipment, without regard to whether the Covered Refrigeration Equipment currently utilizes a Refrigerant regulated under those regulations;

11

c.    The applicable requirements, methodologies, and procedures to be followed by Defendant's employees, contractors, and agents for determining Full Charge of Covered Refrigeration Equipment;

d.    The requirements, methodology, and procedures applicable to leak detection, leak rate calculation, leak repair, and verification testing that will be followed, including Leak Inspections of all Covered Refrigeration Equipment in all Stores by a trained technician on at least a weekly basis;

e.    The applicable requirements, methodology, and procedures to be followed for determining the Company-Wide Average Leak Rate;

f.    Procedures sufficient to ensure that Covered Refrigeration Equipment is installed in accordance with the *GreenChill Best Practices Guideline Ensuring Leak-Tight Installations of Refrigeration Equipment*, attached to this Consent Decree as Appendix C.

g.    The requirements, methodology, and procedures for creating and maintaining record and, as necessary, reporting to senior managers and/or EPA of:

(1)    All Refrigerant purchases, and any transfers between, additions to, and removals from any Covered Refrigeration Equipment;

(2)    All Refrigerant losses or releases, whether due to leaks or other causes;

(3)    Full Charge determinations;

(4)    Leak rate calculations;

      (5)      Leak repairs, including verification tests and, as needed, retrofit or retirement plans and activities;

      (6)      Company-Wide Average Leak Rate calculations; and

      (7)      All other recordkeeping requirements set forth in the Proposed HFC Regulations (prior to their final publication) and the HFC Regulations (after their final publication);

h.      Identification of responsibilities of individual employees and managers at different levels, as well as contractors, with regard to Covered Refrigeration Equipment, Refrigerant Management Compliance Plan compliance, service activities, refrigerant management, recordkeeping, and reporting.

i.      Requirements and procedures for employee training that, at a minimum:

      (1)      Provide for initial training of all employees who handle Refrigerant or operate, service, or maintain Covered Refrigeration Equipment and provide for annual training of those employees thereafter;

      (2)      Review Defendant's policies and procedures, including employees' and contractors' individual responsibilities for compliance with the Proposed HFC Regulations (prior to their final publication) and the HFC Regulations (after their final publication), any successor regulations, the Refrigerant Compliance Management Plan, and this Consent Decree; and

      (3)      Review leak monitoring policies and procedures, including procedures for recording information related to the RCMP for

Covered Refrigeration Equipment into the electronic data management system;

20.    EPA will in writing either: (a) approve the Refrigerant Compliance Management Plan; or (b) approve the Refrigerant Compliance Management Plan upon specified conditions; or (c) approve part of the Refrigerant Compliance Management Plan and disapprove the remainder; or (d) disapprove the Refrigerant Compliance Management Plan.

21.    If the Refrigerant Compliance Management Plan is approved pursuant to Paragraph 20(a), Defendant shall, within 30 Days, implement the Refrigerant Compliance Management Plan, as approved, at all Stores owned or operated by Defendant.  If the Refrigerant Compliance Management Plan is conditionally approved or approved only in part pursuant to Paragraph 20(b) or (c), Defendant shall, upon written direction from EPA, take all actions required by the Refrigerant Compliance Management Plan that EPA determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section XI (Dispute Resolution).

22.    If the Refrigerant Compliance Management Plan is disapproved in whole or in part pursuant to Paragraph 20(c) or (d), Defendant shall, within 30 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the Refrigerant Compliance Management Plan or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

23.    If a resubmitted Refrigerant Compliance Management Plan or portion thereof is disapproved in whole or in part, EPA may again require Defendant to correct any deficiencies, in

14

accordance with the preceding Paragraphs, or may itself correct any deficiencies subject to Defendant's right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties.

24.     If Defendant elects to invoke Dispute Resolution as set forth in Paragraphs 65-72, Defendant shall do so by sending a Notice of Dispute in accordance with Paragraph 66 within 30 Days (or such other time as the Parties agree to in writing) after receipt of the applicable decision.

25.     Once implemented in accordance with Paragraph 21, a violation of the Refrigerant Compliance Management Plan shall be a violation of this Consent Decree.

26.     Prior to implementing any amendments or changes to the Refrigerant Compliance Management Plan, Defendant shall submit a revised Refrigerant Compliance Management Plan to EPA along with a letter identifying the amendments or changes.  Approval of the amendments or changes are subject to the procedures set forth in Paragraphs 18 through 25.  Until any amendments or changes have been approved, the previously approved Refrigerant Compliance Management Plan shall remain in effect.

**B.     Company-Wide Leak Rate Reduction**

27.     Defendant shall achieve a Company-Wide Average Leak Rate that is at or below 26%, 23%, 19%, and 16% for each of the first, second, third, and fourth Effective Years, respectively.

28.     If Defendant fails to achieve a Company-Wide Average Leak Rate that is at or below 26%, 23%, 19%, and 16% for any of the first, second, third, and fourth Effective Years, respectively, in accordance with Paragraph 27, Defendant shall take the following measures:

        a.     Defendant shall pay stipulated penalties pursuant to Section IX of this Consent Decree.

b.     Within 90 Days following the Effective Year in which Defendant failed to achieve a Company-Wide Average Leak Rate that is at or below 26% for the first Effective Year, 23% for the second Effective Year, 19% for the third Effective Year, and/or 16% for the fourth Effective Year in accordance with Paragraph 27, Defendant shall submit to EPA a proposed Corrective Action Plan for approval pursuant to this Consent Decree. The proposed Corrective Action Plan shall include a description of all actions taken or to be taken to ensure that Defendant achieves a Company-Wide Average Leak Rate that is at or below 23% for the second Effective Year, 19% for the third Effective Year, and 16% for the fourth Effective Year and each Effective Year thereafter and, with respect to actions not already completed, the schedule for their implementation. EPA shall review the Corrective Action Plan in accordance with the procedures applicable to Refrigerant Compliance Management Plans, set forth in Paragraphs 20-25. To the extent the proposed Corrective Action Plan requires action prior to receipt of EPA's approval or disapproval, Defendant shall cause the proposed Corrective Action Plan to be implemented in accordance with the schedule set forth therein until EPA approves a Corrective Action Plan or a Corrective Action Plan is completed pursuant to Dispute Resolution.

c.     Upon receipt of EPA's approval of the Corrective Action Plan, or upon completion of the Corrective Action Plan pursuant to Dispute Resolution, Defendant shall implement the Corrective Action Plan in accordance with the schedule set forth therein.

      d.      If Defendant fails to achieve a Company-Wide Average Leak Rate that is at or below 16% for the fourth Effective Year, Defendant shall continue to take the measures set forth in this Paragraph each subsequent Effective Year until it achieves a Company-Wide Average Leak Rate that is at or below 16% for an Effective Year.

      e.      If Defendant achieves a Company-Wide Average Leak Rate that is at or below 16% for any Effective Year prior to the fourth Effective Year, Defendant may seek termination of the Decree at that time in accordance with Section XIX, so long as the other conditions of that Section are met.

## C.  **Appliance Repair Schedule**

29.    Defendant shall take the actions set forth in the Appliance Repair Schedule attached to the Consent Decree as Appendix D, on the schedule set forth therein;

30.    If any actions required by Paragraph 29 have not been completed by the deadline established in the Appliance Repair Schedule, Defendant shall pay stipulated penalties pursuant to Section IX of this Consent Decree.

31.    The Appliance Repair Schedule may be modified only by a subsequent written agreement signed by the Parties.

## D.  **Use of Advanced Refrigerants**

32.    Defendant shall ensure that all Covered Refrigeration Equipment in each New Store, any New Commercial Refrigeration Appliance, and each Major Remodel uses only Advanced Refrigerants.

33.    Defendant shall convert all Covered Refrigeration Equipment in at least three Stores to use only Advanced Refrigerants by January 1, 2028.  These conversions are in addition to the repairs required pursuant to Section VI.C and Appendix D.

\* \* \*

34.    Nothing in Section VI shall be construed to exempt Defendant from full compliance with the HFC Regulations, any successor regulation, or any other regulation the EPA has issued or may in the future promulgate pertaining to the use and management of refrigerants in commercial refrigeration appliance or comfort cooling appliance.  Nothing in this Consent Decree shall be construed to require compliance with the HFC Regulations, the Proposed HFC Regulations, or any successor regulations, to the extent that the HFC Regulations, the Proposed HFC Regulations, or any successor regulations are lawfully withdrawn by EPA or are enjoined, stayed, or vacated by a court order applicable to conduct occurring in the Southern District of New York.

## VII.    PARTICIPATION IN RECOGNITION PROGRAMS

35.    Defendant shall not seek store certification from, or partnership in, any federal or state program designed primarily to reduce refrigerant emissions, including EPA's GreenChill Advanced Refrigeration Partnership, until termination of this Consent Decree.  This Paragraph shall not be construed to prohibit Defendant from exchanging data or information with or through any such recognition program.

## VIII.    REPORTING REQUIREMENTS

36.    Within 90 Days after each Effective Year, Defendant shall submit to the United States a Compliance Report that includes the following information for the prior Effective Year:

a.  A list of all Stores, noting all Acquired Stores, New Stores, openings, closings, lease terminations, lease expirations, and transfers of ownership or operation;

b.  A list of all Covered Refrigeration Equipment at each Store, which includes manufacturer, model, and year of the Covered Refrigeration Equipment, Refrigerant used in such Covered Refrigeration Equipment, and its Full Charge, in pounds, as of the last day of such Effective Year;

c.  A list of all retired Covered Refrigeration Equipment;

d.  A list of the Covered Refrigeration Equipment that has been relocated to a different Store owned or operated by Defendant;

e.  The number of pounds of Refrigerant added to each piece of Covered Refrigeration Equipment at each Store;

f.  The Company-Wide Average Leak Rate;

g.  A certification of compliance with the Refrigerant Compliance Management Plan during the prior Effective Year;

h.  A certification that the response actions from the Appliance Repair Schedule have been completed by the timeframes specified in the Appliance Repair Schedule during the prior Effective Year, or a description of all incidences of noncompliance during the prior Effective Year and a certification of otherwise compliance with the response actions;

i.  A description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the

19

cause of a violation cannot be fully explained at the time the Compliance Report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the Compliance Report, including a full explanation of the cause of the violation, within 60 Days of the day Defendant becomes aware of the cause of the violation;

j.     An affirmative statement regarding compliance or non-compliance with this Consent Decree during the prior Effective Year; and

k.     The following information regarding Advanced Refrigerants in Covered Refrigeration Equipment pursuant to Paragraphs 32 and 33: (1) Store location; (2) Refrigerant used; (3) Full Charge; and (4) details of where/how leaks occurred.

37.     Data in each Compliance Report submitted by Defendant under this Section shall be submitted in Microsoft Excel or equivalent spreadsheet form. Defendant shall submit each Compliance Report to the United States in electronic form in accordance with the requirements of Section XV (Notices) of this Consent Decree.

38.     Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA and the National Response Center orally or by electronic of facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in Paragraph 61.

39.     Each Compliance Report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

40.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

41.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

42.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

43.     Defendant may request an extension of the deadline for submitting a Compliance Report pursuant to this Section, provided that such request is made within 30 days prior to the deadline.

## IX.     STIPULATED PENALTIES

44.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements

of this Decree and within the specified time schedules established by or approved under this Decree.

45. <u>Late Payment of Civil Penalty</u>. If Defendant fails to pay the civil penalty required to be paid under Section V (Civil Penalty) when due (including any payments in Appendix B), Defendant shall pay a stipulated penalty of $2,500 per Day for each Day that the payment is late.

46. <u>Store Transfer</u>. If Defendant transfers a Store and fails to comply with the requirements of Paragraph 5 of this Decree, Defendant shall pay a stipulated penalty of $35,000.

47. <u>Refrigerant Compliance Management Plan</u>. For each failure to implement a Refrigerant Compliance Management Plan at a Store as required by Section VI.A, Defendant shall pay a stipulated penalty of $500 per violation per Day until the date on which the applicable required implementation is completed.

48.    Company-Wide Average Leak Rate.  If Defendant fails to achieve a Company-Wide Average Leak Rate set forth in Section VI.B, Defendant shall pay stipulated penalties as follows:

| Company-Wide Leak Rate | First Effective Year | Second Effective Year | Third Effective Year | Fourth Effective Year and Subsequent Years |
|---|---|---|---|---|
| Greater than 26% | $62,500 | $125,000 | $250,000 | $500,000 |
| Greater than 23% but less than or equal to 26% | -- | $100,000 | $200,000 | $400,000 |
| Greater than 19% but less than or equal to 23% | -- | -- | $150,000 | $300,000 |
| Greater than 16% but less than or equal to 19% | -- | -- | -- | $200,000 |

49.    Appliance Repair.  If Defendant fails to complete a response action required to be completed under Section VI.C in a timely manner, Defendant shall pay a stipulated penalty of $1,000 for each Day the response action is unfinished.

50.    Advanced Refrigeration.  If, during any of the Effective Years, Defendant uses a refrigerant other than an Advanced Refrigerant in any Covered Refrigeration Equipment in a New Store, New Commercial Refrigeration Appliance, or Major Remodel, Defendant shall pay a stipulated penalty of $1,000 per Day of such use.

51.    Reporting Requirements.  If a Compliance Report is not timely submitted pursuant to Section VIII, Defendant shall pay a stipulated penalty of $1,000 per violation per Day unless an extension of the deadline is requested from the EPA in advance of the deadline and EPA grants such request.  A Compliance Report that does not meet any of the requirements in Section VIII is not considered timely until all of the requirements are met.

52.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

53.     Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

54.     Stipulated penalties shall continue to accrue as provided in Paragraph 52 during any Dispute Resolution but need not be paid until the following:

      a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

      b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

      c.     If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 30 Days of receiving the final appellate court decision.

55.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraphs 11 and 12, except that the

transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

56.    If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

57.    The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

58.    <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendant's violation of this Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  Defendant reserves its right to contest any such actions by the United States against Defendant except on the grounds that such actions are barred by this Consent Decree.  The amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

59.    Nothing in this Section shall be construed to prohibit Defendant from applying to the Court for modification of the Consent Decree in accordance with Section XVIII.

## X.    FORCE MAJEURE

60.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

61.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice by email to EPA, within 72 hours of when Defendant first knew that the event might cause a delay.  Within seven Days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for

26

Case 1:24-cv-04981-JLR    Document 6    Filed 09/10/24    Page 27 of 59


any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

62. If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, in itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

63. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

64. If Defendant elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 60 and 61. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XI.    DISPUTE RESOLUTION

65.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes brought by Defendant arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

66.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends DOJ and EPA a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed twenty Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within fourteen Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

67.    Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ and EPA a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

68.    The United States will send Defendant its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall

include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position is binding on Defendant unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

69.    <u>Judicial Dispute Resolution</u>. Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute. The motion (a) must be filed within twenty Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph; (b) may not raise any issue not raised in informal dispute resolution pursuant to Paragraph 66, unless the Plaintiff raises a new issue of law or fact in the Statement of Position; (c) shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and (d) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

70.    The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

71.    Standard of Review

      a.    <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 69 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all

other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.    <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 69, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

72.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 54.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII.   INFORMATION COLLECTION AND RETENTION

73.    The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.    monitor the progress of activities required under this Consent Decree;

b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.     obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.     obtain documentary evidence, including photographs and similar data; and

e.     assess Defendant's compliance with this Consent Decree.

74.     Upon request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant.  Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

75.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

76.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by

federal law.  If Defendant asserts such a privilege, it shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

77.    Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

78.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

79.    This Consent Decree resolves only the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

80.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing

regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 79.

81.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Stores, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 79.

82.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7601, *et seq.*, or with any other provisions of federal, State, or local laws, regulations, or permits.

83.    This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

84.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIV.   COSTS

85.    The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XV.   NOTICES

86.    Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent by mail or email, addressed as follows:

| | |
|---|---|
| As to DOJ by email (preferred): | Zachary.Bannon@usdoj.gov<br>Dominika.Tarczynska@usdoj.gov |
| As to DOJ by mail: | Zachary Bannon<br>United States Attorney's Office – SDNY<br>86 Chambers St., 3rd Floor<br>New York, New York 10007 |
| As to EPA by email: | r5airenforcement@epa.gov<br>Re: DJ # 90-5-2-1-12759<br><br>For courtesy purposes only, electronic copies to:<br>Hall.Charles@epa.gov |
| As to Defendant by mail: | Red Apple Group<br>Attn: Legal Department<br>800 Third Avenue, 5th Floor<br>New York, NY 10022 |
| As to Defendant by email: | legal@ragny.com |

87.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address (including whether service by mail or email is required) provided above.

34

88.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVI.    EFFECTIVE DATE

89.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVII.    RETENTION OF JURISDICTION

90.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XI and XVIII, or effectuating or enforcing compliance with the terms of this Decree.

## XVIII. MODIFICATION

91.    The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

92.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section XI (Dispute Resolution); provided, however, that, instead of the burden of proof provided by Paragraph 71, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX.    TERMINATION

93.    After Defendant has completed the requirements of Section VI, thereafter maintained continuous satisfactory compliance with this Consent Decree for a period of twelve

months, and paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

94.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

95.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section XI.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until sixty Days after service of its Request for Termination.

## XX.    PUBLIC PARTICIPATION

96.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XXI.  SIGNATORIES/SERVICE

97.     Each undersigned representative of Defendant and the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

98.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.  Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXII.  INTEGRATION

99.     This Consent Decree, including deliverables that are subsequently approved pursuant to this Decree, constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements and understandings, whether oral or written, concerning the subject matter of the subject matter of the Decree herein.

## XXIII. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

100.    For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance of Paragraphs 6, 18-21, 25-33, 35-42, and 73-74, is restitution, remediation, or required to come into compliance with law.

## XXIV. HEADINGS

101.    Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXV.  FINAL JUDGMENT

102.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

Dated and entered this 10 day of  September , 2024

_Jennifer Rochon_
UNITED STATES DISTRICT JUDGE
JENNIFER L. ROCHON

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 4, enter judgment, and CLOSE the case.

FOR THE UNITED STATES OF AMERICA:

June 28, 2024
_____
Dated

                 DAMIAN WILLIAMS
                 United States Attorney for the
                 Southern District of New York

By:

                 ZACHARY BANNON
                 DOMINIKA TARCZYNSKA
                 Assistant United States Attorney
                 86 Chambers Street, 3rd Floor
                 New York, NY 10007
                 Tel.: (212) 637-2728
                 Fax: (212) 637-2786
                 Email: zachary.bannon@usdoj.gov
                           dominika.tarczynska@usdoj.gov

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

ROBERT KAPLAN    Digitally signed by ROBERT
                 KAPLAN
                 Date: 2024.06.24 08:38:08 -05'00'

Robert A. Kaplan
Regional Counsel
U.S. Environmental Protection Agency, Region 5


Nora Wells
Attorney Advisor
U.S. Environmental Protection Agency, Region 5

FOR GRISTEDES FOODS NY, INC.:

John Catsimatidis
President

# Appendix A – Company-Wide Average Leak Rate Formula

Company Wide Avg. Leak Rate $= \left( \dfrac{Refrigerant\ Added_{WCRE} + Refrigerant\ Added_{Unit\ A} + Refrigerant\ Added_{Unit\ B} + \ldots\ Refrigerant\ Added_{Unit\ "N"}}{Full\ Charge_{WCRE} + Full\ Charge_{Unit\ A} + Full\ Charge_{Unit\ A} + \ldots\ Full\ Charge_{Unit\ "N"}} \right) \times 100\%$

**TERMS:**

**WCRE** = Wholly-Covered Refrigeration Equipment, which means all Covered Refrigeration Equipment (as defined in the Consent Decree) that was owned or operated by Gristedes for all 12 months of an Effective Year (as defined in the Consent Decree).

**Unit A, Unit B, . . . Unit "N"** = Individual appliances that are Covered Refrigeration Equipment (as defined in the Consent Decree) that were owned or operated by Gristedes for less than 12 months during the prior Effective Year (i.e., Partially-Covered Refrigeration Equipment).

**Refrigerant Added** = The total amount of the refrigerant added (in pounds) to the Covered Refrigeration Equipment during the prior Effective Year, as follows:
- For Wholly-Covered Refrigeration Equipment, the total amount of refrigerant added (in pounds) to all Wholly-Covered Refrigeration Equipment during the prior Effective Year.
- For Partially-Covered Refrigeration Equipment, the amount of refrigerant added (in pounds) to the appliance (Unit A, Unit B, ....) during the period that the Company owned the appliance during the prior Effective Year.

The Refrigerant Added shall not include: (i) the initial charge of Refrigerant added to any new Covered Refrigeration Equipment; (ii) where Refrigerant has been recovered from existing Covered Refrigeration Equipment, the amount of such Refrigerant used to recharge such Covered Refrigeration Equipment, up to the amount of Refrigerant recovered (including recharging Covered Refrigeration Equipment that is retrofitted to use an Advanced Refrigerant to comply with this Consent Decree); (iii) the amount of substitutes, including carbon dioxide, in the end uses as set forth in 40 C.F.R. § 82.154(a)(1); or (iv) the amount of any Refrigerant added to a Covered Refrigeration Equipment to replace Refrigerant released as the result of an event that is determined by EPA or the Court to constitute a force majeure event under Section X of this Consent Decree (Force Majeure).

**Full Charge** = The amount of refrigerant required for normal operating characteristics and conditions of the appliance (Unit A, Unit B, ....) as determined pursuant to 40 C.F.R. Part 82, Subpart F (*See* definition of "Full Charge" at 40 C.F.R. § 82.152), as follows:
- For Wholly-Covered Refrigeration Equipment, the full charge is the total amount of refrigerant (in pounds) needed to fully charge all Wholly-Covered Refrigeration Equipment.
- For Partially-Covered Refrigeration Equipment, the full charge is the amount of refrigerant (in pounds) needed to fully charge the appliance (Unit A, Unit B,....).

## Appendix B – Civil Penalty Payment Schedule

| Deadline for Payment | | Principle w/o interest | Interest | Total Installment Payment | Unpaid Balance |
|---|---|---|---|---|---|
| 30 | Days after entry | 100,000.00 | 1,709.59 | 101,709.59 | 300,000.00 |
| 120 | Days after entry | 100,000.00 | 3,846.58 | 103,846.58 | 200,000.00 |
| 210 | Days after entry | 100,000.00 | 2,564.38 | 102,564.38 | 100,000.00 |
| 300 | Days after entry | 100,000.00 | 1,282.19 | 101,282.19 | 0.00 |

# A P P E N D I X   <u>C</u>



The GreenChill Advanced Refrigeration Partnership

GreenChill Best Practices Guideline
Ensuring Leak-Tight Installations of Commercial
Refrigeration Equipment

U.S. Environmental Protection Agency
Stratospheric Protection Division

# GreenChill Best Practices Guideline
## Ensuring Leak-Tight Installations of Refrigeration Equipment

GreenChill recommends the following procedures as best practices, to ensure that your refrigeration equipment is leak-free when installed, unless local codes or system design restraints require otherwise. **Always adhere to testing procedures required by local codes, and do not exceed system design pressures. Make sure pressure used is in compliance with local codes and that you meet all local code requirements for rough-in inspection.**

---

**Attention:  Always follow safety standards.  Ensure proper ventilation at all times.**

---

**1. Pre-Check**
Before beginning the leak check procedures, carry out the following pre-check:
- visually inspect refrigerant lines and joints for proper piping assembly and installation;
- ensure proper bracing;
- ensure that there are no metal to metal contact points;
- manually verify that all mechanical joints are tight;
- ensure tightness of all electrical connections; and
- check phase monitor for correct polarity.

**2. Isolate components not suitable for the pressure levels contained in these Guidelines. Warning:  some components are not suitable for high pressure levels, including, but not limited to, some compressors, pressure transducers, and safety relief valves.  Check with the component manufacturer if any doubt exists as to whether certain components should be isolated from the rest of the system during pressure tests.**

**3. Before beginning the pressure test in step 5, ensure all defrost heaters are disconnected or by-passed.**

**4. Open all valves, either manually or by energizing the solenoids, including the following:**
- ball valves to circuits, branches, satellites, condenser, heat reclaim, receiver, etc.;
- main liquid line solenoid valve;
- suction stop EPR valves;
- both sides of condenser and heat reclaim piping; and
- de-energize the solenoid valves (which are normally open).

The lead authors of this Guideline and the organizations to which they belong do not assume responsibility for any omissions or errors, nor assume liability for any damages that result from the use of the Guideline.  Always check with your component manufacturers before undertaking any action that may affect your equipment.

2

**5. Pressure Testing for leaks**
- Charge system with regulated dry nitrogen and the appropriate tracer gas to bring system pressure up to 300 psig minimum. GreenChill does not condone the use of fluorinated refrigerants (all CFCs including R-12, all HCFCs including R-22, HFCs) as tracer gases. CFCs and HCFCs may not be used due to the harm they cause to the earth's ozone layer.
- Check system access points to verify pressurization.
  - Note: Branches may be tested in segments to reduce the time needed to locate leaks and associated wasted test gas. However, for the final test, all valves must be open.
- If leak is found, carry out the following procedure:
  - isolate leak from rest of system;
  - repair leak;
  - retest area to verify leak has been repaired;
  - re-pressurize the area to 300 psig; and
  - before continuing, make sure all valves that were closed to isolate the leak are opened again after the leak has been repaired.
- After system has been checked for leaks and all leaks have been repaired and retested, the system must stand, unaltered, for 24 hours with no more than a +/- 1 pound pressure change from 300 psig, using the same gauge. Ambient air temperature changes may lead to a slight increase or decrease in pressure.
- If system does not drop below 300 psig within the 24 hours, the system is then ready to be evacuated.
- Release the nitrogen charge to the atmosphere (make sure you have adequate ventilation).

**6. Pre-Evacuation**
Nitrogen, air, and moisture can remain in the system if the system is not properly evacuated. Moisture causes expansion valve ice blockage, wax build up, and acid in the oil.

Before beginning the evacuation process, make sure you observe the following:
- ensure system is completely depressurized;
- plan procedures so breaking the vacuum with refrigerant does not introduce contaminates into the system;
- the evacuation pump should be connected to three points on the rack, unless the system is small (if the system is small, the evacuation pump may only need to be connected at 2 points);
  - the $^3/_8$ inch flare ports are ideal for these connections,
  - copper lines are preferred over hoses, and
  - if any hoses are used, they must be special vacuum hoses, as standard pressure hoses tend to collapse under high vacuum and increase the time required to fully evacuate the system;
- Vacuum pump:
  - Vacuum pumps should be rated at 8 cfm or larger. Pumps should be connected to several branch circuits to access all components of the system.

The lead authors of this Guideline and the organizations to which they belong do not assume responsibility for any omissions or errors, nor assume liability for any damages that result from the use of the Guideline. Always check with your component manufacturers before undertaking any action that may affect your equipment.

3

* *Be sure each pump is tested prior to use and vacuum sensors are in working order. The pump must be able to achieve a vacuum of at least 300 microns. Test vacuum gauges and vacuum sensors according to manufacturer's instructions.*
  o Use clean vacuum pump oil as recommended by the pump manufacturer.
  o Make sure electrical connections to the pump are secure and uninterrupted.
  o Check all vacuum pump connections for leaks.
  o Monitor the pump for signs of normal operation (e.g. "vapor" from the pump exhaust early in the procedure that tapers off).
- Lines and valves:
  o Use all copper lines or hoses that are suitable for vacuum duty.
  o Use packless valves.
  o One large vacuum pump can be used, if a header is connected to three different points on the system.
  o All schrader valve caps need to be properly tightened and checked. Check the condition of o-ring in Schrader valve caps.
  o All access valves need to be properly tightened and o-rings intact. In a deep vacuum, the stems will draw in and cause a loss of vacuum. This will not be noticed during a pressure test.
- Micron vacuum gauge (digital, analog, LED)
  o Before beginning evacuation, calibrate the micron gauges per manufacturer's instructions.
  o Verify with a gauge that the vacuum pump can pull a vacuum of at least 300 microns.
  o Measure vacuum at a minimum of two locations. These two locations must be at the most extreme positions of the system.

## 7. Stairstep Evacuation Procedure
*Vacuum requirements may be dictated by customer and/or code requirements.*
- Pull a system vacuum down to at least 1000 microns (+/- 50 microns) and close the vacuum header valves. If the system cannot pull a vacuum at any step and returns to atmospheric pressure, which is an indication of a leak, test for and repair the leak using the previously described procedure with tracer gas.
- If the 1000 micron vacuum holds for 30 minutes, break the vacuum with dry nitrogen to a pressure of 2 psig
  * ***Do not exceed micron gauge transducer limits or transducer will be damaged!***
- Install system suction and liquid drier cores.
- Pull a second vacuum to a minimum of 500 microns.
- Close vacuum header valves.
- If the 500 micron vacuum holds for a minimum of 30 minutes, then break the vacuum with the refrigerant to be used in the system to a pressure of 2 psig.
- Pull a third vacuum to a minimum of 300 microns.
- Close vacuum header valves and allow system to stand for a minimum of 24 hours.
- If the 300 micron vacuum holds for 24 hours with a maximum drift of 100 microns over the 24 hour period, then the system is ready to be charged with refrigerant.

The lead authors of this Guideline and the organizations to which they belong do not assume responsibility for any omissions or errors, nor assume liability for any damages that result from the use of the Guideline. Always check with your component manufacturers before undertaking any action that may affect your equipment.

4

- Break the vacuum with the refrigerant to be used in the system and charge the system with refrigerant.
- Add liquid line driers and oil to the compressors, oil separator and oil reservoirs, if equipped.

## 8. Charging
- Leave open:
  - Ball Valves – to circuits, satellites, condenser, heat reclaim, receiver
  - Main liquid line solenoid valve - should now be under control of the electronic controller
  - Branch circuit liquid line solenoid valves – back out manual open stems
  - Suction Stop EPR – should now be under control of the electronic controller
  - Split condenser – should be operating under pressure controls
  - Verify operation of condenser fans and rotation direction
  - Verify operation of case and evaporator fans to avoid flood back
- Close ball valve immediately downstream of the receiver.
- Connect proper refrigerant tank to receiver access port through a liquid line drier.
- Charge receivers to 60% on the liquid gauge or to the point of pressure equalization
- Disconnect refrigerant tank from the receiver access port
- Open ball valve immediately downstream of the receiver
- Continue charging system by connecting proper refrigerant drum to the suction header
  - Start the compressor with the lowest capacity rating to speed up charging process
  - Isolate refrigerant circuit liquid line and charge through that port
  - Charge system to 30% of the receiver on the liquid gauge
  - Set compressor and all pressure controls
  - Suction pressure should remain below a pressure corresponding to zero degrees Fahrenheit low temp system.  Suction pressure should remain below a pressure corresponding to forty degrees Fahrenheit for medium temp system
  - Turn on additional compressors as needed
  - Avoid adding more oil until system is properly charged

## 9. Final Check
- Now that the system is operational, conduct a complete walk-through of the system with a leak detector to make sure no leak has occurred in mechanical fittings due to vibration or pipes rubbing together.

The lead authors of this Guideline and the organizations to which they belong do not assume responsibility for any omissions or errors, nor assume liability for any damages that result from the use of the Guideline.  Always check with your component manufacturers before undertaking any action that may affect your equipment.



The GreenChill Advanced Refrigeration Partnership is an EPA cooperative alliance with the supermarket industry and other stakeholders to promote advanced technologies, strategies, and practices that reduce refrigerant charges and emissions of **ozone-depleting substances** and **greenhouse gases**.

Working with EPA, GreenChill Partners:

> Transition to non-ozone-depleting refrigerants;
> Reduce refrigerant charges;
> Reduce both ozone-depleting and greenhouse gas refrigerant emissions; and
> Promote supermarkets' adoption of advanced refrigeration technologies.

Lead authors:  Keilly Witman – U.S. E.P.A.; Jon Perry – Farm Fresh / Supervalu; Scott Martin – Hill Phoenix; Steve Hagler – Hussmann; Buzz Schaeffer – Hussmann; Travis Lumpkin – Kysor Warren; Bruce Hierlmeier – Zero Zone.

Special thanks to others who contributed to the Guideline:  Bella Maranion – U.S. E.P.A.; Dave Godwin – U.S. E.P.A.; David Hinde – Hill Phoenix, Dick Bienvenu – Hussmann; Mark Westphal – Zero Zone; Food Lion; Giant Eagle; Hannaford; Publix Super Markets; Whole Foods Market; Pat Murphy – NATE; and Warren Beeton – Emerson..

The lead authors of this Guideline and the organizations to which they belong do not assume responsibility for any omissions or errors, nor assume liability for any damages that result from the use of the Guideline.  Always check with your component manufacturers before undertaking any action that may affect your equipment.

6

# Appendix D – Appliance Repair Schedule

| Store No. | System ID No. | Current Refrig. Type | Repair and Replacement Schedule | | | Effective Year | | | | Completed |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Replace Case | Retrofit Case | Remove Circuit | 1 | 2 | 3 | 4 | |
| 533 | Ckt-A2 | 404a | x | | | | | x | | |
| | Ckt-A4 | 404a | x | | | | | x | | |
| | Ckt-A3 | 404a | x | | | | | x | | |
| | Ckt-B7a | 404a | x | | | | | | | X |
| | Ckt-B7b | 404a | x | | | | | | | X |
| | Ckt-B6 | 404a | x | | | | x | | | |
| | Ckt-A1 | 404a | | | x | | | x | | |
| | Ckt-A4 | 404a | x | | | | | x | | |
| | Ckt-A2 | 404a | x | | | | | x | | |
| | Ckt-A3 | 404a | x | | | | | x | | |
| | Ckt-C5a | 404a | x | | | x | | | | |
| | Ckt-C5b | 404a | x | | | x | | | | |
| | Ckt-C6 | 404a | x | | | x | | | | |
| | Ckt-C1 | 404a | x | | | | | | | X |
| | Ckt-C2 | 404a | x | | | x | | | | |

| Store No. | System ID No. | Current Refrig. Type | Repair and Replacement Schedule | | | Effective Year | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Replace Case | Retrofit Case | Remove Circuit | 1 | 2 | 3 | 4 | Completed |
| 413 | Ckt-C3 | 404a | X | | | X | | | | |
| | Ckt-B1 | 404a | X | | | | | | | |
| | Ckt-B2 | 404a | X | | | | | X | | |
| | Ckt-B3 | 404a | X | | | | | X | | |
| | Ckt-C4 | 404a | X | | | X | | | | |
| | Ckt-C7 | 404a | X | | | X | | | | |
| | Ckt-C8 | 404a | X | | | | | | | |
| | Ckt-A5 | 404a | X | | | | | X | | |
| | Ckt-B7 | 404a | X | | | | X | | | |
| | Ckt-C9 | 404a | X | | | | X | | | |
| | Ckt-C10 | 404a | X | | | | X | | | |
| | Ckt-A1 | 404a | X | | | | X | | | |
| | Ckt-A2 | 404a | X | | | | | X | | |
| 601 | Ckt-A3 | 404a | X | | | | | X | | X |
| | Ckt-A4 | 404a | X | | | | | X | | |
| | Ckt-A5 | 404a | X | | | | | X | | |
| | Ckt-A1 | 404a | X | | | | | X | | |
| | Ckt-B6 | 404a | X | | | X | | | | |
| | Ckt-C2a | 404a | X | | | | | | | X |
| | Ckt-C2b | 404a | X | | | | | | | X |
| | Ckt-B9 | 404a | X | | | X | | | | |
| | Ckt-B3 | 404a | X | | | | | X | | |
| | Ckt-B4 | 404a | X | | | | | X | | |

| Store No. | System ID No. | Current Refrig. Type | Repair and Replacement Schedule | | | Effective Year | | | | Completed |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Replace Case | Retrofit Case | Remove Circuit | 1 | 2 | 3 | 4 | |
| 597 | Ckt-B5 | 404a | X | | | | | X | | |
| | Ckt-B6 | 404a | X | | | | | X | | |
| | Ckt-A2 | 404a | X | | | | X | | | |
| | Ckt-A3 | 404a | X | | | | X | | | |
| | Ckt-B7 | 404a | X | | | | X | | | |
| | Ckt-A1 | 404a | X | | | | X | | | |
| 511 | Ckt-A2 | 404a | X | | | | | X | | |
| | Ckt-A3 | 404a | X | | | | | X | | |
| | Ckt-A4 | 404a | X | | | | | X | | |
| | Ckt-A5 | 404a | X | | | | | X | | |
| | Ckt-C3 | 404a | X | | | X | | | | |
| | Ckt-C4 | 404a | X | | | X | | | | |
| | Ckt-C9 | 404a | X | | | | | | | X |
| | Ckt-C7 | 404a | X | | | | | | | X |
| | Ckt-C8 | 404a | X | | | | | | | X |
| | Ckt-C6 | 404a | X | | | | | | | X |
| | Ckt-A6 | 404a | X | | | | X | | | |
| | Ckt-C1 | 404a | X | | | | X | | | |
| | Ckt-C12 | 404a | X | | | | X | | | |
| 512 | Ckt-A1 | 404a | X | | | | | X | | |
| | Ckt-A2 | 404a | X | | | | | X | | |
| | Ckt-A3 | 404a | X | | | | | X | | |
| | Ckt-B1 | 404a | X | | | | | X | | |
| | Ckt-B2 | 404a | X | | | | | | X | |
| | Ckt-B3a | 404a | X | | | | | | X | |

| Store No. | System ID No. | Current Refrig. Type | Repair and Replacement Schedule | | | Effective Year | | | | Completed |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Replace Case | Retrofit Case | Remove Circuit | 1 | 2 | 3 | 4 | |
| | Ckt-B3b | 404a | X | | | | | | | |
| | Ckt-C6 | 404a | X | | | | | | X | |
| | Ckt-C3 | 404a | X | | | | | X | | |
| | Ckt-C4 | 404a | X | | | | | X | | |
| | Ckt-C5 | 404a | X | | | | | X | | |
| | Ckt-A3 | 404a | X | | | X | | | | |
| | Ckt-A4 | 404a | | | X | | | | | X |
| | Ckt-A1 | 404a | X | | | X | | | | |
| | Ckt-A2 | 404a | X | | | X | | | | |
| | Ckt-B1 | 404a | X | | | | | | | X |
| | Ckt-B2 | 404a | X | | | X | | | | |
| 524 | Ckt-B3 | 404a | X | | | | | | | X |
| | Ckt-B4a | 404a | X | | | | | | | X |
| | Ckt-B4b | 404a | X | | | | | | | X |
| | Ckt-C4 | 404a | | | X | | | | | X |
| | Ckt-C5 | 404a | | | X | | | | | X |
| | Ckt-C6 | 404a | X | | | | | X | | |
| | Ckt-C7 | 404a | | | X | | | | | X |
| | Ckt-C8 | 404a | X | | | X | | | | |
| | Ckt-C9 | 404a | | | X | | | | | X |
| | Ckt-C10 | 404a | X | | | X | | | | |
| | Ckt-C3 | 404a | X | | | X | | | | |
| | Ckt-C1 | 404a | X | | | X | | | | |
| | Ckt-C2 | 404a | X | | | X | | | | |
| | Ckt-A1 | 404a | X | | | | | X | | |

| Store No. | System ID No. | Current Refrig. Type | Repair and Replacement Schedule | | | Effective Year | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Replace Case | Retrofit Case | Remove Circuit | 1 | 2 | 3 | 4 | Completed |
| 544 | Ckt-A2a | 404a | X | | | | | X | | |
| | Ckt-A2b | 404a | X | | | | | X | | |
| | Ckt-A4 | 404a | X | | | | | | | X |
| | Ckt-A3a | 404a | X | | | | | X | | |
| | Ckt-A3b | 404a | X | | | | | X | | |
| | Ckt-A5a | 404a | X | | | | | X | | |
| | Ckt-A5b | 404a | X | | | | | X | | |
| | Ckt-B8a | 407a | X | | | | X | | | |
| | Ckt-B8b | 407a | X | | | | X | | | |
| | Ckt-B7a | 407a | X | | | | X | | | |
| | Ckt-B7b | 407a | X | | | | X | | | |
| | Ckt-B12 | 407a | X | | | | X | | | |
| | Ckt-B11a | 407a | | | X | | | | | X |
| | Ckt-B11b | 407a | X | | | | | | | X |
| | Ckt-B9 | 407a | X | | | | | | | X |
| | Ckt-B5 | 407a | X | | | | | | | X |
| | Ckt-B4 | 407a | | | X | | | | | X |
| | Ckt-B5 | 407a | X | | | | | | | X |
| | Ckt-B6 | 407a | X | | | | | | | X |
| | Ckt-C7 | 407a | X | | | | X | | | X |
| | Ckt-C9 | 407a | X | | | | X | | | |
| | Ckt-A6 | 407a | X | | | | X | | | |
| | Ckt-A6 | 404a | X | | | | | X | | |
| | Ckt-A7 | 404a | X | | | | | X | | |
| | Ckt-A5 | 404a | X | | | | | X | | |

| Store No. | System ID No. | Current Refrig. Type | Repair and Replacement Schedule | | | Effective Year | | | | Completed |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Replace Case | Retrofit Case | Remove Circuit | 1 | 2 | 3 | 4 | |
| 34 | Ckt-A4 | 404a | X | | | | | X | | |
| | Ckt-A3 | 404a | X | | | | | X | | |
| | Ckt-A2 | 404a | X | | | | | X | | |
| | Ckt-B22 | 404a | X | | | | | | X | |
| | Ckt-B23 | 404a | X | | | | | | X | |
| | Ckt-B24 | 404a | X | | | | | | X | |
| | Ckt-B18 | 404a | X | | | | | | | |
| | Ckt-B19 | 404a | X | | | | | | X | |
| | Ckt-B13 | 404a | X | | | X | | | X | |
| | Ckt-B15 | 404a | X | | | X | | | | |
| | Ckt-B14 | 404a | X | | | X | | | | |
| | Ckt-B9 | 404a | X | | | | | X | | |
| | Ckt-B8 | 404a | X | | | | | X | | |
| 82 | Ckt-A3 | 407a | X | | | | | X | | |
| | Ckt-A4 | 407a | X | | | | | X | | |
| | Ckt-A1 | 407a | X | | | | | X | | |
| | Ckt-A2 | 407a | X | | | | | X | | |
| | Ckt-B6 | 407a | X | | X | | | X | | X |
| 543 | Ckt-A2 | 404a | X | | | | | X | | |
| | Ckt-A3 | 404a | X | | | | | X | | |
| | Ckt-C2a | 404a | X | | | | | X | | |
| | Ckt-C2b | 404a | X | | | | | X | | |
| | Ckt-C3a | 404a | X | | | | | X | | |
| | Ckt-C3b | 404a | X | | | | | X | | |
| | Ckt-C3c | 404a | X | | | | | X | | |

| Store No. | System ID No. | Current Refrig. Type | Repair and Replacement Schedule | | | Effective Year | | | | Completed |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Replace Case | Retrofit Case | Remove Circuit | 1 | 2 | 3 | 4 | |
| | Ckt-B6 | 404a | | | X | | | | | X |
| | Ckt-B5a | 404a | | | X | | | | | X |
| | Ckt-B5b | 404a | X | | | | | | | X |
| | Ckt-A4 | 404a | X | | | | X | | | |
| | Ckt-A3 | 404a | X | | | | X | | | |
| | Ckt-A7 | 404a | X | | | | X | | | |
| | Ckt-A6 | 404a | X | | | | X | | | |
| | Ckt-A5 | 404a | X | | | | X | | | |
| | Ckt-A2 | 404a | X | | | | X | | | |
| | Ckt-B3 | 404a | X | | | X | | | | |
| | Ckt-C1 | 404a | X | | | | | | | |
| | Ckt-C2 | 404a | X | | | | | | | |
| | Ckt-C8a | 404a | X | | | X | | | | |
| | Ckt-C8b | 404a | X | | | X | | | | |
| 59 | Ckt-C3 | 404a | X | | | X | | | | |
| | Ckt-C4 | 404a | X | | | X | | | | |
| | Ckt-C5 | 404a | X | | | X | | | | |
| | Ckt-B5 | 404a | X | | | X | | | | |
| | Ckt-B10 | 404a | X | | | | | X | | |
| | Ckt-B9 | 404a | X | | | | | X | | |
| | Ckt-B6 | 404a | X | | | | | X | | |
| | Ckt-B7 | 404a | X | | | | | X | | |
| | Ckt-A1 | 404a | X | | | | | X | | |
| | Ckt-A3 | 404a | X | | | | | X | | |
| | Ckt-A4 | 404a | X | | | | | X | | |

| Store No. | System ID No. | Current Refrig. Type | Replace Case | Retrofit Case | Remove Circuit | 1 | 2 | 3 | 4 | Completed |
|---|---|---|---|---|---|---|---|---|---|---|
| 40 | Ckt-A5 | 404a | X | | | | | X | | |
| | Ckt-A6 | 404a | X | | | | | X | | |
| | Ckt-B5 | 404a | X | | | | | | X | |
| | Ckt-B11 | 404a | X | | | X | | | | |
| | Ckt-B12 | 404a | X | | | X | | | | |
| | Ckt-A9 | 404a | X | | | X | | | | |
| | Ckt-A10 | 404a | X | | | | | | X | |
| | Ckt-A1 | 404a | X | | | | | | X | |
| 437 | Ckt-A4 | 404a | X | | | | | X | | |
| | Ckt-A5 | 404a | X | | | | | X | | |
| | Ckt-A1 | 404a | X | | | | | X | | |
| | Ckt-A2 | 404a | X | | | | | X | | |
| | Ckt-A3 | 404a | X | | | | | X | | |
| | Ckt-B5 | 404a | X | | | X | | | | |
| | Ckt-B7c | 404a | X | | | X | | | | |
| | Ckt-B9 | 404a | X | | | X | | | | |
| | Ckt-B7a/b | 404a | X | | | X | | | | |
| | Ckt-B4b | 404a | X | | | X | | | | |
| | Ckt-B1 | 404a | X | | | | X | | | |
| | Ckt-B2a | 404a | X | | | | X | | | |
| | Ckt-B2b | 404a | X | | | | X | | | |
| | Ckt-C7 | 404a | X | | | | | | X | |
| | Ckt-B9 | 404a | X | | | | | | X | |
| | Ckt-B6 | 404a | X | | | | | | X | |
| | Ckt-C6 | 404a | X | | | | | | X | |

| Store No. | System ID No. | Current Refrig. Type | Replace Case | Retrofit Case | Remove Circuit | 1 | 2 | 3 | 4 | Completed |
|---|---|---|---|---|---|---|---|---|---|---|
| | Ckt-C8 | 404a | X | | | | | | X | |
| | Ckt-A6 | 404a | X | | | | | | X | |
| | Ckt-A7 | 404a | X | | | | | | X | |
| | Ckt-A4 | 404a | X | | | | | X | | |
| | Ckt-A5 | 404a | X | | | | | X | | |
| | Ckt-A6 | 404a | X | | | | | X | | |
| | Ckt-A17a | 404a | X | | | | | X | | |
| | Ckt-A17b | 404a | X | | | | | X | | |
| | Ckt-A18 | 404a | X | | | | | X | | |
| 517 | Ckt-A1 | 404a | X | | | | | X | | |
| | Ckt-A3 | 404a | X | | | | | X | | |
| | Ckt-B5 | 404a | X | | | | | | | X |
| | Ckt-B6 | 404a | X | | | | | | | X |
| | Ckt-A16 | 404a | X | | | | | | X | |
| | Ckt-D1 | 404a | X | | | | | | | X |
| | Ckt-A10 | 404a | X | | | | | | | X |
| | Ckt-B16 | 404a | X | | | | | | X | |
| | Ckt-A9 | 404a | X | | | | | | X | |
| | Ckt-B17 | 404a | X | | | | | | X | |
| | Ckt-A4 | 404a | X | | | | | X | | |
| | Ckt-A3 | 404a | X | | | | | X | | |
| 550 | Ckt-A5 | 404a | X | | | | | X | | |
| | Ckt-A2 | 404a | X | | | | | X | | |
| | Ckt-A1 | 404a | X | | | | | X | | |
| | Ckt-C2 | 404a | | | X | | | | | |

| Store No. | System ID No. | Current Refrig. Type | Repair and Replacement Schedule | | | Effective Year | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Replace Case | Retrofit Case | Remove Circuit | 1 | 2 | 3 | 4 | Completed |
| | Ckt-C8 | 404a | | | X | | | | | |
| | Ckt-A1 | 404a | X | | | | | | X | |
| 518 | Ckt-A2 | 404a | X | | | | | | X | |
| | Ckt-A3 | 404a | X | | | | | | X | |
| | Ckt-A4 | 404a | X | | | | | | X | |
| | Ckt-B1 | 404a | X | | | | | | | X |